TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00788-CV






Michael A. Acosta, Appellant


v.


City of Austin, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. D-1-GN-07-000500, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellant Michael Acosta was employed by appellee, the City of Austin, from
June 2003 to May 2006. After his employment with the City ended, Acosta filed suit against the
City. In his lawsuit, Acosta, who is of Hispanic descent, alleges that various employment-related
actions taken by the City adverse to Acosta were committed in retaliation against him for his
complaints that his pay was lower than that of non-Hispanic employees with less experience
and tenure. The City filed a motion for summary judgment based, in part, on non-retaliatory reasons
for the employment-related actions at issue. The district court granted the City's motion for
summary judgment and entered a take nothing judgment against Acosta. We hold that Acosta's
lawsuit was timely filed, but that summary judgment was proper based on the non-retaliatory reasons
articulated by the City for its actions. We affirm the judgment of the district court.

Factual and Procedural Background

 Acosta was hired by the City on June 30, 2003. He worked at the Sand Hill power
plant operated by Austin Energy, first as a plant mechanic, and then as an operations and
maintenance specialist. His employment with the City ended in May 2006.

 Acosta filed suit against the City on February 16, 2007, asserting claims under
the Texas Commission on Human Rights Act (TCHRA). Acosta alleged that the City discriminated
against him based on his national origin, see Tex. Lab. Code Ann. § 21.051 (West 2006), and that
the City retaliated against him for his verbal complaints of disparate pay based on national origin,
see id. § 21.055 (West 2006). On August 14, 2008, the City filed a motion for summary judgment
on all of Acosta's claims. In his response, Acosta nonsuited his discrimination claim, leaving only
his retaliation claim. Under this remaining claim, Acosta alleges that the City retaliated against him
by (1) issuing a written reprimand against him in January 2006; (2) terminating his employment in
May 2006 despite his attempt to withdraw his written resignation; and (3) not rehiring him despite
his being "better qualified" than the applicants hired. On October 2, 2008, the district court granted
the City's motion for summary judgment and entered a take nothing judgment against Acosta. 
Acosta appeals.

Standard of Review

 We review summary judgments de novo. Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). Under the standard applicable to a traditional motion for
summary judgment, the motion should be granted only when the movant establishes that there
is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. See
Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). In
reviewing a motion for summary judgment, we accept as true all evidence favorable to the
non-movant, making every reasonable inference and resolving all doubts in the non-movant's favor.
See Nixon, 690 S.W.2d at 548-49. We will affirm the summary judgment if any ground presented
to the district court is meritorious. See Pickett v. Texas Mut. Ins. Co., 239 S.W.3d 826, 840
(Tex. App.--Austin 2007, no pet.).

Timely Filing of Lawsuit

 The City asserted in its motion for summary judgment that Acosta's claims should
be dismissed for his failure to file suit within 60 days from receiving a right to sue letter. In his first
point on appeal, Acosta argues that the district court erred to the extent it based its judgment on
Acosta's failure to timely file suit.

 Under the TCHRA, a person claiming to be aggrieved by an unlawful employment
practice may file a complaint with the Texas Workforce Commission within 180 days of the date the
alleged employment practice occurred, see Tex. Lab. Code Ann. §§ 21.201(a), .202(a) (West 2006),
and the person must file any civil action within two years of the date the complaint is filed, see id.
§ 21.256 (West 2006). Moreover, the civil action must be brought within 60 days after the date
the person receives from the Commission a notice of the right to file a civil action. See id. § 21.254
(West 2006).

 On August 28, 2006, the Commission sent Acosta notice of his right to file a
civil action. Acosta did not file suit until February 16, 2007. However, between those dates
Acosta amended his complaint at the Commission to include an allegation of retaliation, and on
December 18, 2006, the Commission sent Acosta a second notice of right to file a civil action. See
id. § 21.201(f) (amendment to complaint alleging additional facts relates back to date complaint first
received by Commission). Section 21.254 does not require that suit be filed within 60 days of the
"initial," "first," or "original" notice. It refers only to "a notice of the right to file a civil action." 
Id. § 21.254. Acosta's original petition was filed within 60 days of the Commission's December 18,
2006 issuance of a notice of right to file a civil action. Therefore, Acosta's claim of retaliation was
not time-barred.

Non-Retaliatory Bases for Adverse Employment Actions

 The City also asserted in its motion for summary judgment that the "summary
judgment evidence establishes that Defendant had legitimate, nondiscriminatory reasons for the
employment actions taken." Where, as here, there is no direct evidence but only circumstantial
evidence of discrimination or retaliation, the claim is analyzed under the McDonnell Douglas
burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973);
see also Mayberry v. Texas Dep't of Agric., 948 S.W.2d 312, 315 n.2 (Tex. App.--Austin 1997,
writ denied) ("We may look to federal civil rights law in interpreting cases brought under the
[TCHRA].").

 Under the McDonnell Douglas burden-shifting framework, a plaintiff must first
present a prima facie case of discrimination. See Turner v. Baylor Richardson Med. Ctr., 476 F.3d
337, 345 (5th Cir. 2007). An employer commits an unlawful employment practice under the
TCHRA if the employer retaliates or discriminates against a person who opposes a discriminatory
practice. See Tex. Lab. Code Ann. § 21.055. If a plaintiff is successful in establishing a prima facie
case of discrimination, the employer may rebut the presumption of discrimination by articulating
a legitimate, nondiscriminatory reason for the adverse employment action. See Turner, 476 F.3d
at 345. If the employer meets its burden, then the burden shifts back to the plaintiff to present
substantial evidence that the employer's reason was pretext for discrimination. Id. If the plaintiff
can show that the proffered explanation is merely pretextual, that showing, when coupled with
the prima facie case, will usually be sufficient to survive summary judgment. See id. (citing Reeves
v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-48 (2000)).

 In his second point on appeal, Acosta argues that a "nondiscriminatory" basis for
the City's actions is not the same as a non-retaliatory basis. (1) Thus, according to Acosta, when he
nonsuited his discrimination claim, the City's arguments in its motion for summary judgment
regarding a nondiscriminatory basis for its actions became irrelevant. The City's failure to
specifically use the phrase "non-retaliatory basis," Acosta argues, was fatal to its request for
summary judgment on Acosta's retaliation claim.

 We disagree. The McDonnell Douglas burden-shifting framework applies to
retaliation claims in the same manner as to discrimination claims. See id. at 348; Herbert v. City of
Forest Hill, 189 S.W.3d 369, 377 (Tex. App.--Fort Worth 2006, no pet.). Acosta's discrimination
and retaliation claims focused on the same employment-related actions by the City. Thus, the City's
assertion that it had a legitimate reason for its employment decisions applied equally to Acosta's
allegations of discrimination and retaliation. In addressing the applicable employment decisions,
the City addressed Acosta's retaliation claim by incorporating all of the arguments it had presented
with respect to the discrimination claim. In fact, in his response to the City's motion for
summary judgment, Acosta characterized the City's arguments against his retaliation claim as raising
non-retaliatory bases, which Acosta then sought to show were "false or pretextual." We conclude
that the existence of legitimate, non-retaliatory bases for the City's actions was expressly presented
to the district court by the City's motion for summary judgment. See Tex. R. Civ. P. 166a(c).

 In his fourth point on appeal, Acosta contends that he produced sufficient evidence
to create a genuine issue of material fact as to whether the non-retaliatory bases alleged by the
City for its actions are pretextual. In its motion for summary judgment, the City argued that, even
if Acosta established a prima facie case of retaliation, there were non-retaliatory reasons for each of
the City's employment actions at issue, and Acosta failed to raise a fact issue that such reasons
were pretextual. In articulating a non-retaliatory reason for an adverse employment action, the City's
burden is one of production and not persuasion. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502,
506-08 (1993). Acosta, then, bears the burden of producing evidence that the non-retaliatory
justifications supported by the City's evidence are pretextual. (2) See Shackelford v. Deloitte & Touche,
LLP, 190 F.3d 398, 408 (5th Cir. 1999). Bearing in mind the burden of proof, we analyze the City's
non-retaliatory justifications for each of the three adverse employment actions alleged. (3)

 Reprimand

 On January 13, 2006, Acosta received a written reprimand. The reprimand stated
that "throughout 2005" Acosta was "involved with horseplay/pranks and bantering comments
towards other Austin Energy employee(s)." According to Acosta, such accusations were false and
unsupported, and it was his verbal complaints in 2005 regarding white employees receiving higher
pay--which, Acosta alleged, he had communicated directly to two of his immediate supervisors
who, in turn, communicated them to the Sand Hill plant's operations and maintenance supervisor
Jay Youmans--that caused Youmans to fabricate the reprimand in retaliation. Acosta stated by
affidavit that he "refused to sign this reprimand as it was clearly false and just Youmans['s] means
of harassing me."

 As a non-retaliatory basis for the reprimand, the City asserts that the reprimand was
solely the product of a human resources investigation that did not include plant management's
discretion. Dexter Robinson, the City's human resources manager, averred that Rachel Rodriguez,
a human resources advisor, conducted the investigation. Acosta likewise stated that, during the
investigation preceding his reprimand, Rodriguez was the employee who interviewed him. Robinson
also averred that it is Austin Energy's practice that investigations be conducted by a neutral party
in human resources to maintain objectivity. According to Youmans, Rodriguez issued a report and
recommendation that four employees should receive reprimands for their actions. Youmans stated
that he did not deviate from Rodriguez's recommendations.

 There is no evidence that Youmans deviated in any manner from Rodriguez's
recommendations in issuing the reprimands to Acosta and the three other employees. (4) There is
no evidence that Youmans or another member of the Sand Hill plant's management had any
responsibility for Rodriguez's recommendation that Acosta receive a reprimand. Moreover, there
is no evidence that Rodriguez or anyone else in the human resources department was aware of any
complaints previously made by Acosta. Acosta, therefore, has failed to meet his burden of producing
some evidence that Youmans's reason for issuing the reprimand was pretext for retaliation. (5)




 Termination

 Acosta alleges that his May 2006 termination of employment was done in retaliation
for his verbal complaints of disparate pay. It is undisputed that Acosta voluntarily resigned. (6)
Nonetheless, Acosta argues that the relevant adverse employment action is Youmans's refusing to
allow Acosta to withdraw his resignation.

 The City presented Acosta's failure to withdraw his resignation within 48 hours as
a non-retaliatory basis for Youmans's refusal. It is undisputed that the City had a policy that an
employee who submits his resignation reserves the right to withdraw the resignation within 48 hours.
The parties dispute when the 48-hour period begins to run--the City contends it began to run when
Acosta placed the resignation letter in Youmans's inbox, and Acosta contends it began to run when
Youmans actually received the letter. However, we need not consider this factual dispute, because
Acosta failed to withdraw his resignation within 48 hours after Youmans actually received the letter. (7)

 The evidence shows that Youmans received the resignation letter some time before
8 a.m. on Monday, May 1, 2006. Acosta was not at work that Monday or Tuesday. Acosta arrived
at work on Wednesday, May 3 before Youmans arrived, which again occurred some time before
8 a.m. Acosta alleges that he approached Youmans immediately upon his arrival so as to withdraw
his resignation, but that Youmans "cut him off" and informed Acosta that he could not discuss
anything until after some morning meetings. Acosta was not able to meet with Youmans until
11 a.m., at which time Acosta informed Youmans that he wanted to withdraw his resignation, but
was told that it was too late.

 There is no dispute, therefore, that Acosta did not withdraw his resignation within
48 hours. Acosta alleges that before 8 a.m. he told Youmans he "needed to speak to him about" the
resignation, but there is no evidence that he actually communicated his desire to withdraw his
resignation to Youmans or any other supervisor until the 11 a.m. meeting. Moreover, the relevant
City policy does not require a withdrawal of resignation to occur in person, and yet Acosta did not
attempt to accomplish his withdrawal by telephone, by email, or by placing a written withdrawal in
Youmans's inbox--the same method by which Acosta had communicated his resignation in the first
place. Acosta admits that he was aware of the 48-hour policy and of the fact that Youmans would
have received the resignation before 8 a.m. on Monday morning. Despite his admitted knowledge,
he allowed the 48-hour period to expire, thus terminating his right to withdraw his resignation.
Therefore, Acosta failed to meet his burden of producing some evidence that the City's reason for
terminating Acosta was pretext for retaliation. (8)

 Failure to Rehire

 Acosta also alleges that the City retaliated against him after his termination of
employment by not rehiring him. Acosta refers to three positions for which he applied: power plant
operator and power plant board operator at the Decker power plant on May 22, 2006, and an
operations and maintenance specialist with Austin Energy on June 19, 2006. Acosta was not
interviewed for or offered any of the three positions.

 The City's non-retaliatory justification for its failure to rehire Acosta is that all
three positions were filled by internal applicants with more seniority than Acosta. In fact, the
two operator positions were posted for "departmental employees only." The only position for which
Acosta was even eligible, therefore, was the specialist position. The City provided evidence that
internal employees are generally given preference for position openings, and that the person hired
was an internal candidate. There is no evidence that the three positions were not filled by qualified,
current employees of Austin Energy. Acosta alleges that he produced sufficient evidence of the
City's justification being pretextual because when he called Tim Moore, the plant manager at
Decker, Moore allegedly stated "I've heard about you," and because Moore admitted in his
deposition that Youmans gave him negative information about Acosta. However, Acosta admitted
that Moore had informed him that Moore was not the hiring manager. Moore stated by affidavit
that his superintendents oversaw the employee selection process, only one candidate was
recommended for hire to Moore, and Acosta was not that candidate. There is no evidence that
those superintendents had any communications with Youmans or had any retaliatory motive. Acosta
argues in his briefing that "if Acosta would have been credited with being a current employee," he
would have been "competitive if not better qualified" than the applicants selected for the positions. 
There is, however, no evidence that the City had any reason to treat Acosta as a current employee
when he was not one. Acosta has failed to meet his burden of producing some evidence that the
City's reason for not rehiring Acosta was pretext for retaliation.

Conclusion

 Acosta's lawsuit was timely filed. However, Acosta failed to raise a genuine issue
of material fact regarding whether the City's articulated non-retaliatory reasons for Acosta's
reprimand, termination, and not being rehired were pretextual. The judgment of the district court
is affirmed.



 __________________________________________

 G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;

 Concurring and Dissenting Opinion by Justice Patterson


Affirmed


Filed: June 30, 2010
1. In his second point on appeal, Acosta also presents arguments relating to the "after-acquired evidence doctrine," which the City raised in its motion for summary judgment as an
additional defense to Acosta's retaliation claim. We do not address this issue because we conclude
that summary judgment was properly granted based on the non-retaliatory bases articulated by
the City unrelated to the after-acquired evidence. For this reason, we also do not address Acosta's
sixth point on appeal, in which Acosta contends the district court erred in striking portions of
Acosta's evidence. That evidence operates only as rebuttal to the after-acquired evidence produced
by the City, which we have not considered in our analysis. See Tex. R. App. P. 44.1(a)(1).
2. The dissent misapplies the burden of proof. To be entitled to summary judgment, the
employer is not required to establish, as a matter of law, that its proffered reason for its action was,
in fact, the actual reason--and, thus, is not a pretext. Rather, the employer is required to establish,
as a matter of law, that its proffered reason is both a legitimate reason and non-retaliatory. See
Johnson v. City of Houston, 203 S.W.3d 7, 12 (Tex. App.--Houston [14th Dist.] 2006, pet. denied). 
Acosta does not argue that the City's proffered reasons discussed herein are not legitimate or non-retaliatory. Acosta argues on appeal that the City's proffered reasons for its actions are pretextual,
and he bears the burden as to this point. See id.
3. In his seventh point on appeal, Acosta argues that the district court erred in not striking
portions of thirteen paragraphs from various affidavits as well as certain documents, each of which
was attached to the City's motion for summary judgment. Our affirmance of the district court's
judgment based on the City's articulated non-retaliatory reasons for its actions is made without
relying on (1) the disputed portions of the thirteen paragraphs, (2) the three documents specifically
identified as improperly admitted, or (3) any documents that were arguably referenced in
paragraph 13 of the City's exhibit 7 and were objected to by Acosta in his motion to strike based on
lack of authentication. Therefore, we need not address Acosta's arguments in his seventh point on
appeal. See Tex. R. App. P. 44.1(a)(1).
4. Acosta does not allege that the reprimands given to the other three employees were the
result of discrimination (two of the employees reprimanded are white) or retaliation.
5. Having concluded that Acosta failed to present any evidence controverting the City's non-retaliatory basis for the written reprimand, we need not address his third point on appeal, in
which Acosta contends that the reprimand was "materially adverse" and, therefore, could support
a prima facie case of retaliation.
6. According to Acosta, he resigned because he was "very depressed" about his father's recent
death and he was "mistreated by Youmans at work."
7. Because we do not consider this factual dispute, we need not address Acosta's fifth point
on appeal, in which he challenges the district court's striking of evidence. The evidence at issue is
relevant only to Acosta's argument that the 48-hour period begins to run when the City management
representative receives the resignation.
8. The dissent's discussion regarding the City's possible motivations is not relevant to the
analysis. The alleged misconduct by the City is not its refusal to accept an employee's withdrawal
of his own resignation, but its refusal to permit the employee to exercise his right to do so under an
existing employee policy. Once the 48-hour period expired, Acosta had no right under the policy
to withdraw his resignation, and there is no evidence that Acosta communicated his desire to
exercise such right within the 48-hour period or that he was in any way prevented from doing so.