# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00788-CV

**Michael A. Acosta, Appellant**

**v.**

**City of Austin, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-07-000500, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Michael Acosta was employed by appellee, the City of Austin, from June 2003 to May 2006. After his employment with the City ended, Acosta filed suit against the City. In his lawsuit, Acosta, who is of Hispanic descent, alleges that various employment-related actions taken by the City adverse to Acosta were committed in retaliation against him for his complaints that his pay was lower than that of non-Hispanic employees with less experience and tenure. The City filed a motion for summary judgment based, in part, on non-retaliatory reasons for the employment-related actions at issue. The district court granted the City's motion for summary judgment and entered a take nothing judgment against Acosta. We hold that Acosta's lawsuit was timely filed, but that summary judgment was proper based on the non-retaliatory reasons articulated by the City for its actions. We affirm the judgment of the district court.

*Factual and Procedural Background*

Acosta was hired by the City on June 30, 2003. He worked at the Sand Hill power plant operated by Austin Energy, first as a plant mechanic, and then as an operations and maintenance specialist. His employment with the City ended in May 2006.

Acosta filed suit against the City on February 16, 2007, asserting claims under the Texas Commission on Human Rights Act (TCHRA). Acosta alleged that the City discriminated against him based on his national origin, *see* Tex. Lab. Code Ann. § 21.051 (West 2006), and that the City retaliated against him for his verbal complaints of disparate pay based on national origin, *see id.* § 21.055 (West 2006). On August 14, 2008, the City filed a motion for summary judgment on all of Acosta's claims. In his response, Acosta nonsuited his discrimination claim, leaving only his retaliation claim. Under this remaining claim, Acosta alleges that the City retaliated against him by (1) issuing a written reprimand against him in January 2006; (2) terminating his employment in May 2006 despite his attempt to withdraw his written resignation; and (3) not rehiring him despite his being "better qualified" than the applicants hired. On October 2, 2008, the district court granted the City's motion for summary judgment and entered a take nothing judgment against Acosta. Acosta appeals.

*Standard of Review*

We review summary judgments de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under the standard applicable to a traditional motion for summary judgment, the motion should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See*

2

Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing a motion for summary judgment, we accept as true all evidence favorable to the non-movant, making every reasonable inference and resolving all doubts in the non-movant's favor. *See Nixon*, 690 S.W.2d at 548-49. We will affirm the summary judgment if any ground presented to the district court is meritorious. *See Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.).

***Timely Filing of Lawsuit***

The City asserted in its motion for summary judgment that Acosta's claims should be dismissed for his failure to file suit within 60 days from receiving a right to sue letter. In his first point on appeal, Acosta argues that the district court erred to the extent it based its judgment on Acosta's failure to timely file suit.

Under the TCHRA, a person claiming to be aggrieved by an unlawful employment practice may file a complaint with the Texas Workforce Commission within 180 days of the date the alleged employment practice occurred, *see* Tex. Lab. Code Ann. §§ 21.201(a), .202(a) (West 2006), and the person must file any civil action within two years of the date the complaint is filed, *see id.* § 21.256 (West 2006). Moreover, the civil action must be brought within 60 days after the date the person receives from the Commission a notice of the right to file a civil action. *See id.* § 21.254 (West 2006).

On August 28, 2006, the Commission sent Acosta notice of his right to file a civil action. Acosta did not file suit until February 16, 2007. However, between those dates Acosta amended his complaint at the Commission to include an allegation of retaliation, and on

3

December 18, 2006, the Commission sent Acosta a second notice of right to file a civil action. *See id.* § 21.201(f) (amendment to complaint alleging additional facts relates back to date complaint first received by Commission). Section 21.254 does not require that suit be filed within 60 days of the "initial," "first," or "original" notice. It refers only to "a notice of the right to file a civil action." *Id.* § 21.254. Acosta's original petition was filed within 60 days of the Commission's December 18, 2006 issuance of a notice of right to file a civil action. Therefore, Acosta's claim of retaliation was not time-barred.

### *Non-Retaliatory Bases for Adverse Employment Actions*

The City also asserted in its motion for summary judgment that the "summary judgment evidence establishes that Defendant had legitimate, nondiscriminatory reasons for the employment actions taken." Where, as here, there is no direct evidence but only circumstantial evidence of discrimination or retaliation, the claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *see also Mayberry v. Texas Dep't of Agric.*, 948 S.W.2d 312, 315 n.2 (Tex. App.—Austin 1997, writ denied) ("We may look to federal civil rights law in interpreting cases brought under the [TCHRA].").

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first present a prima facie case of discrimination. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). An employer commits an unlawful employment practice under the TCHRA if the employer retaliates or discriminates against a person who opposes a discriminatory practice. *See* Tex. Lab. Code Ann. § 21.055. If a plaintiff is successful in establishing a prima facie

case of discrimination, the employer may rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *See Turner*, 476 F.3d at 345. If the employer meets its burden, then the burden shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination. *Id.* If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment. *See id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48 (2000)).

In his second point on appeal, Acosta argues that a "nondiscriminatory" basis for the City's actions is not the same as a non-retaliatory basis.[1] Thus, according to Acosta, when he nonsuited his discrimination claim, the City's arguments in its motion for summary judgment regarding a nondiscriminatory basis for its actions became irrelevant. The City's failure to specifically use the phrase "non-retaliatory basis," Acosta argues, was fatal to its request for summary judgment on Acosta's retaliation claim.

We disagree. The *McDonnell Douglas* burden-shifting framework applies to retaliation claims in the same manner as to discrimination claims. *See id.* at 348; *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App.—Fort Worth 2006, no pet.). Acosta's discrimination

---

[1] In his second point on appeal, Acosta also presents arguments relating to the "after-acquired evidence doctrine," which the City raised in its motion for summary judgment as an additional defense to Acosta's retaliation claim. We do not address this issue because we conclude that summary judgment was properly granted based on the non-retaliatory bases articulated by the City unrelated to the after-acquired evidence. For this reason, we also do not address Acosta's sixth point on appeal, in which Acosta contends the district court erred in striking portions of Acosta's evidence. That evidence operates only as rebuttal to the after-acquired evidence produced by the City, which we have not considered in our analysis. *See* Tex. R. App. P. 44.1(a)(1).

and retaliation claims focused on the same employment-related actions by the City. Thus, the City's assertion that it had a legitimate reason for its employment decisions applied equally to Acosta's allegations of discrimination and retaliation. In addressing the applicable employment decisions, the City addressed Acosta's retaliation claim by incorporating all of the arguments it had presented with respect to the discrimination claim. In fact, in his response to the City's motion for summary judgment, Acosta characterized the City's arguments against his retaliation claim as raising non-retaliatory bases, which Acosta then sought to show were "false or pretextual." We conclude that the existence of legitimate, non-retaliatory bases for the City's actions was expressly presented to the district court by the City's motion for summary judgment. *See* Tex. R. Civ. P. 166a(c).

In his fourth point on appeal, Acosta contends that he produced sufficient evidence to create a genuine issue of material fact as to whether the non-retaliatory bases alleged by the City for its actions are pretextual. In its motion for summary judgment, the City argued that, even if Acosta established a prima facie case of retaliation, there were non-retaliatory reasons for each of the City's employment actions at issue, and Acosta failed to raise a fact issue that such reasons were pretextual. In articulating a non-retaliatory reason for an adverse employment action, the City's burden is one of production and not persuasion. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08 (1993). Acosta, then, bears the burden of producing evidence that the non-retaliatory justifications supported by the City's evidence are pretextual.[2] *See Shackelford v. Deloitte & Touche,*

---

[2] The dissent misapplies the burden of proof. To be entitled to summary judgment, the employer is not required to establish, as a matter of law, that its proffered reason for its action was, in fact, the actual reason—and, thus, is not a pretext. Rather, the employer is required to establish, as a matter of law, that its proffered reason is both a legitimate reason and non-retaliatory. *See Johnson v. City of Houston*, 203 S.W.3d 7, 12 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

*LLP*, 190 F.3d 398, 408 (5th Cir. 1999).  Bearing in mind the burden of proof, we analyze the City's

non-retaliatory justifications for each of the three adverse employment actions alleged.[3]

*Reprimand*

On January 13, 2006, Acosta received a written reprimand.  The reprimand stated

that "throughout 2005" Acosta was "involved with horseplay/pranks and bantering comments

towards other Austin Energy employee(s)."  According to Acosta, such accusations were false and

unsupported, and it was his verbal complaints in 2005 regarding white employees receiving higher

pay—which, Acosta alleged, he had communicated directly to two of his immediate supervisors

who, in turn, communicated them to the Sand Hill plant's operations and maintenance supervisor

Jay Youmans—that caused Youmans to fabricate the reprimand in retaliation.  Acosta stated by

affidavit that he "refused to sign this reprimand as it was clearly false and just Youmans['s] means

of harassing me."

As a non-retaliatory basis for the reprimand, the City asserts that the reprimand was

solely the product of a human resources investigation that did not include plant management's

Acosta does not argue that the City's proffered reasons discussed herein are not legitimate or non-retaliatory.  Acosta argues on appeal that the City's proffered reasons for its actions are pretextual, and he bears the burden as to this point.  *See id.*

[3]  In his seventh point on appeal, Acosta argues that the district court erred in not striking portions of thirteen paragraphs from various affidavits as well as certain documents, each of which was attached to the City's motion for summary judgment.  Our affirmance of the district court's judgment based on the City's articulated non-retaliatory reasons for its actions is made without relying on (1) the disputed portions of the thirteen paragraphs, (2) the three documents specifically identified as improperly admitted, or (3) any documents that were arguably referenced in paragraph 13 of the City's exhibit 7 and were objected to by Acosta in his motion to strike based on lack of authentication.  Therefore, we need not address Acosta's arguments in his seventh point on appeal.  *See* Tex. R. App. P. 44.1(a)(1).

discretion.  Dexter Robinson, the City's human resources manager, averred that Rachel Rodriguez, a human resources advisor, conducted the investigation.  Acosta likewise stated that, during the investigation preceding his reprimand, Rodriguez was the employee who interviewed him.  Robinson also averred that it is Austin Energy's practice that investigations be conducted by a neutral party in human resources to maintain objectivity.  According to Youmans, Rodriguez issued a report and recommendation that four employees should receive reprimands for their actions.  Youmans stated that he did not deviate from Rodriguez's recommendations.

There is no evidence that Youmans deviated in any manner from Rodriguez's recommendations in issuing the reprimands to Acosta and the three other employees.[4]  There is no evidence that Youmans or another member of the Sand Hill plant's management had any responsibility for Rodriguez's recommendation that Acosta receive a reprimand.  Moreover, there is no evidence that Rodriguez or anyone else in the human resources department was aware of any complaints previously made by Acosta.  Acosta, therefore, has failed to meet his burden of producing some evidence that Youmans's reason for issuing the reprimand was pretext for retaliation.[5]

---

[4]  Acosta does not allege that the reprimands given to the other three employees were the result of discrimination (two of the employees reprimanded are white) or retaliation.

[5]  Having concluded that Acosta failed to present any evidence controverting the City's non-retaliatory basis for the written reprimand, we need not address his third point on appeal, in which Acosta contends that the reprimand was "materially adverse" and, therefore, could support a prima facie case of retaliation.

*Termination*

Acosta alleges that his May 2006 termination of employment was done in retaliation for his verbal complaints of disparate pay. It is undisputed that Acosta voluntarily resigned.[6] Nonetheless, Acosta argues that the relevant adverse employment action is Youmans's refusing to allow Acosta to withdraw his resignation.

The City presented Acosta's failure to withdraw his resignation within 48 hours as a non-retaliatory basis for Youmans's refusal. It is undisputed that the City had a policy that an employee who submits his resignation reserves the right to withdraw the resignation within 48 hours. The parties dispute when the 48-hour period begins to run—the City contends it began to run when Acosta placed the resignation letter in Youmans's inbox, and Acosta contends it began to run when Youmans actually received the letter. However, we need not consider this factual dispute, because Acosta failed to withdraw his resignation within 48 hours after Youmans actually received the letter.[7]

The evidence shows that Youmans received the resignation letter some time before 8 a.m. on Monday, May 1, 2006. Acosta was not at work that Monday or Tuesday. Acosta arrived at work on Wednesday, May 3 before Youmans arrived, which again occurred some time before 8 a.m. Acosta alleges that he approached Youmans immediately upon his arrival so as to withdraw his resignation, but that Youmans "cut him off" and informed Acosta that he could not discuss

---

[6] According to Acosta, he resigned because he was "very depressed" about his father's recent death and he was "mistreated by Youmans at work."

[7] Because we do not consider this factual dispute, we need not address Acosta's fifth point on appeal, in which he challenges the district court's striking of evidence. The evidence at issue is relevant only to Acosta's argument that the 48-hour period begins to run when the City management representative receives the resignation.

anything until after some morning meetings. Acosta was not able to meet with Youmans until 11 a.m., at which time Acosta informed Youmans that he wanted to withdraw his resignation, but was told that it was too late.

There is no dispute, therefore, that Acosta did not withdraw his resignation within 48 hours. Acosta alleges that before 8 a.m. he told Youmans he "needed to speak to him about" the resignation, but there is no evidence that he actually communicated his desire to withdraw his resignation to Youmans or any other supervisor until the 11 a.m. meeting. Moreover, the relevant City policy does not require a withdrawal of resignation to occur in person, and yet Acosta did not attempt to accomplish his withdrawal by telephone, by email, or by placing a written withdrawal in Youmans's inbox—the same method by which Acosta had communicated his resignation in the first place. Acosta admits that he was aware of the 48-hour policy and of the fact that Youmans would have received the resignation before 8 a.m. on Monday morning. Despite his admitted knowledge, he allowed the 48-hour period to expire, thus terminating his right to withdraw his resignation. Therefore, Acosta failed to meet his burden of producing some evidence that the City's reason for terminating Acosta was pretext for retaliation.[8]

---

[8] The dissent's discussion regarding the City's possible motivations is not relevant to the analysis. The alleged misconduct by the City is not its refusal to accept an employee's withdrawal of his own resignation, but its refusal to permit the employee to exercise his right to do so under an existing employee policy. Once the 48-hour period expired, Acosta had no right under the policy to withdraw his resignation, and there is no evidence that Acosta communicated his desire to exercise such right within the 48-hour period or that he was in any way prevented from doing so.

10

*Failure to Rehire*

Acosta also alleges that the City retaliated against him after his termination of employment by not rehiring him. Acosta refers to three positions for which he applied: power plant operator and power plant board operator at the Decker power plant on May 22, 2006, and an operations and maintenance specialist with Austin Energy on June 19, 2006. Acosta was not interviewed for or offered any of the three positions.

The City's non-retaliatory justification for its failure to rehire Acosta is that all three positions were filled by internal applicants with more seniority than Acosta. In fact, the two operator positions were posted for "departmental employees only." The only position for which Acosta was even eligible, therefore, was the specialist position. The City provided evidence that internal employees are generally given preference for position openings, and that the person hired was an internal candidate. There is no evidence that the three positions were not filled by qualified, current employees of Austin Energy. Acosta alleges that he produced sufficient evidence of the City's justification being pretextual because when he called Tim Moore, the plant manager at Decker, Moore allegedly stated "I've heard about you," and because Moore admitted in his deposition that Youmans gave him negative information about Acosta. However, Acosta admitted that Moore had informed him that Moore was not the hiring manager. Moore stated by affidavit that his superintendents oversaw the employee selection process, only one candidate was recommended for hire to Moore, and Acosta was not that candidate. There is no evidence that those superintendents had any communications with Youmans or had any retaliatory motive. Acosta argues in his briefing that "if Acosta would have been credited with being a current employee," he

11

would have been "competitive if not better qualified" than the applicants selected for the positions. There is, however, no evidence that the City had any reason to treat Acosta as a current employee when he was not one. Acosta has failed to meet his burden of producing some evidence that the City's reason for not rehiring Acosta was pretext for retaliation.

## *Conclusion*

Acosta's lawsuit was timely filed. However, Acosta failed to raise a genuine issue of material fact regarding whether the City's articulated non-retaliatory reasons for Acosta's reprimand, termination, and not being rehired were pretextual. The judgment of the district court is affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;
    Concurring and Dissenting Opinion by Justice Patterson

Affirmed

Filed: June 30, 2010